IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CT-3012-FL

| | | |
|---|---|---|
| MATTHEW THOMAS COOLEY, Plaintiff, | ) | |
| v. | ) | ORDER |
| RAMEL FREEMAN, Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 (DE 27). Plaintiff responded in opposition (DE 37). Also before the court is defendant's unopposed motion to seal (DE 33). In this posture, the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint January 13, 2025, asserting civil rights violations under 42 U.S.C. § 1983. (DE 1). After frivolity review, the court allowed plaintiff to proceed with his excessive force claim under the Eighth Amendment.

Following a period of discovery, and in accordance with the court's case management order, defendant filed the instant motion for summary judgment. Defendant argues that, based on the record evidence produced through discovery, the undisputed record shows that he did not violate plaintiff's constitutional protections against excessive force under the Eighth Amendment

and, alternatively, that he is entitled to qualified immunity. In support, defendant submits a memorandum of law, statement of material facts, and appendix of exhibits including: 1) counsel's declaration, 2) plaintiff's offender public information and infraction history; 3) reports and records from the incident; 4) prison policies, 5) plaintiff's medical records; 6) video recording of the incident; and 7) defendant's declaration.

In opposition, plaintiff argues that defendant is not entitled to summary judgment. In support, plaintiff relies on a memorandum of law and appendix of exhibits including: 1) video recording of the incident (incorporated by reference); 2) prison policies; 3) medical records, requests, and a prescription; 4) reports and records from the incident; and 5) pictures from the incident.

**STATEMENT OF FACTS**

The court recounts the facts in the light most favorable to plaintiff. On July 15, 2024, plaintiff was an inmate at Central Prison in Raleigh, North Carolina. (Compl. (DE 1) at 5).[1] While plaintiff was in full restraints, with his hands cuffed behind his back, defendant helped escort him to a holding cell. (Id.). According to plaintiff, he "cuss[ed] the defendant out" while being escorted and after being placed in the cell. (Plf's Mem. Opp. (DE 37-1) at 3). Plaintiff argues that defendant "felt that he got clowned" by plaintiff in front of his staff and pepper sprayed him in retaliation. (Id. at 2).

---

1 Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management/electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

But record evidence and video recording from the incident paint a different picture.[2] In his declaration supporting summary judgment, defendant attests that plaintiff was discovered under the apparent influence of an intoxicating substance shortly before the incident. (Def's Decl. (DE 30-2) at 1). While searching plaintiff's cell, correctional officers recovered "a quantity of K2." (Id.). Defendant and other staff escorted plaintiff to a holding cell after he became "increasingly aggressive and belligerent" during the search. (Id.).

Recording provided by defendant in support of summary judgment shows plaintiff behaving aggressively toward defendant while being escorted in full restraints to a holding cell by four correctional officers. (Def's Mem. Ex. D (DE 30-1) at 1:04:18). Before entering the holding cell, plaintiff also kicked a trashcan at defendant. (Id. at 1:04:20).

Plaintiff, still in restraints, was then locked in the holding cell. (Id. at 1:04:27). He continued interacting with defendant from inside the cell. (Id. at 1:04:30). As defendant turned away, plaintiff appeared to spit in his direction. (Id. at 1:04:35). According to defendant, plaintiff spit toward him but missed. (DE 30-2 at 2). Defendant then turned back toward plaintiff and unholstered his pepper spray. (Ex. D at 1:04:38). While the recording lacks audio, plaintiff and defendant appeared to continue a confrontational interaction while defendant unlocked the spray mechanism. (Id. at 1:04:45). During this time, defendant states that he gave plaintiff several direct orders to stop and warned that pepper spray would be used if plaintiff continued behaving confrontationally. (DE 30-2 at 2).

Plaintiff appeared to spit toward defendant a second time, and defendant immediately

[2] This video recording was filed manually with the clerk of court (DE 30-1). Citations to the video correspond to the timestamp appearing on the recording.

issued a brief burst of pepper spray toward plaintiff's face. (Id. at 1:04:57). According to defendant, he was struck by plaintiff's saliva. (DE 30-2 at 2). A photograph submitted by defendant in support of summary judgment depicts defendant's wet shirt after being cleaned. (Def's Mem. Ex. E (DE 30-1) at 17). In addition to defendant's declaration, photograph, and video evidence, a witness statement from another correctional officer confirmed that plaintiff's saliva struck defendant in the upper torso. (Def's Mem. Ex. G (DE 30-1) at 30). Plaintiff also pleaded guilty to a disciplinary infraction for spitting on staff. (Id. at 22). Even so, plaintiff now denies spitting on defendant. (DE 37-1 at 3).

After plaintiff was pepper sprayed, defendant continued addressing plaintiff as he walked the outside perimeter of the holding cell. (Ex. D at 1:05:00-31). Defendant then departed from the area without further incident. (Id. at 1:05:37). He states that he used pepper spray on plaintiff "to prevent further assaultive behavior." (DE 30-2 at 2). According to defendant, he "used only the minimal amount of force necessary to stop the ongoing assault and restore order." (Id.).

Following the incident, plaintiff was decontaminated by another correctional officer. (Ex. G at 30). Roughly an hour after the incident, plaintiff was seen by medical staff and approved for transfer to restrictive housing. (Def's Mem. Ex. F (DE 32) at 1). According to that assessment, plaintiff was still experiencing nostril secretions, redness around the face and neck, and voicing discomfort from the pepper spray, but was otherwise physically stable. (Id.).

## COURT'S DISCUSSION

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [the record] must be viewed in the light most favorable to the party opposing the motion.").

But "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v.

Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (cleaned up). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90; see also Scott, 550 U.S. at 380.

B. Analysis

1. Excessive Force under the Eighth Amendment

Defendant raises the affirmative defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Iko v. Shreve, 535 F.3d 225, 237 (4th Cir. 2008). The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022) (cleaned up). First, plaintiff must establish the violation of a constitutional right. Id. Second, defendant bears the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). The court begins with the first step.

As to claims for excessive use of force, the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, the inmate must establish that the force used was "nontrivial" or more than "de minimis." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam).

To satisfy the subjective prong, the inmate must show a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In an excessive force case, "the state of mind required is wantonness in the infliction of pain." Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (cleaned up). The relevant inquiry for the subjective prong is "whether force was applied in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; Brooks, 924 F.3d at 113. "The question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers did use force for that reason." Brooks, 924 F.3d at 113 (emphasis in original).

In analyzing the subjective prong, the court considers four factors "from which additional inferences may be drawn as to the officers' motives." Id. at 116. These factors are: "1) the need for the application of force; 2) the relationship between the need and the amount of force that was used; 3) the extent of any reasonably perceived threat that the application of force was intended to quell; and 4) any efforts made to temper the severity of a forceful response." Iko, 535 F.3d at 239; see also Whitley, 475 U.S. at 321.

Under the objective prong, a reasonable factfinder could find that a "blast of pepper spray directly to the face constitutes something more than de minimis force." Dean v. Jones, 984 F.3d 295, 303 (4th Cir. 2021). Turning to the subjective prong, the parties do not dispute that plaintiff was locked securely in a holding cell when defendant deployed pepper spray against him. Still, defendant contends that, after plaintiff spit at him a second time, his use of pepper spray was necessary "to prevent further assaultive behavior." (DE 30-2 at 2). Under these circumstances, however, "the inferences to be drawn from the Whitley factors are not so plain that they may be resolved as a matter of law on summary judgment." Dean, 984 F.3d at 306. "[T]he justification for using protective force expires at the very moment a threat is neutralized." Id. at 305. As the United States Court of Appeals for the Fourth Circuit has explained "officers may not use gratuitous force against a prisoner who has already been subdued or incapacitated." Id. at 304.

Here, "the need for the use of force in this degree—the subject of the first two factors" was not "so self-evident that no reasonable [factfinder] could infer a malicious motive." See Brooks, 924 F.3d at 116. For instance, with plaintiff locked in a holding cell, a factfinder might conclude that "further assaultive behavior" could have been avoided simply by taking an additional step away from the holding cell, rather than pepper spraying plaintiff. For similar reasons, under the third factor, a reasonable factfinder could determine that plaintiff no longer posed a threat to safety once separated from defendant and other correctional officers by a metal cage. Neither do defendant's "verbal attempts to reason with and calm" plaintiff "preclude an inference that force was applied maliciously, in order to punish [his] continued intransigence" under the fourth factor. Id. at 117.

Importantly, that is not to say that a reasonable factfinder could not find in favor of defendant. The question here is whether defendant used force to induce compliance, as he argues, or whether, as plaintiff contends, defendant used force "wantonly" and "maliciously" for the purpose of punishing plaintiff. Because a reasonable jury could infer defendant's use of force was excessive under the circumstances, judgment as a matter of law is inappropriate on this record.

Under the second prong of the qualified immunity analysis, officials' actions violate clearly established rights only if their unlawfulness is apparent under preexisting law. Iko, 535 F.3d at 237–38. Under this standard, officials must show only "the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." Id. at 238. To determine whether the right in question was clearly established, the court looks to cases from the Supreme Court, the Fourth Circuit, or the highest court of the state in which the action arose. Owens ex rel. Owens v. Lott, 372 F.3d 267, 279-80 (4th Cir. 2004). Although an identical case is not required, "existing precedent must have placed the . . . constitutional question beyond debate." Kisela v. Hughes, 584 U.S. 100, 104 (2018).

Viewing the record in the light most favorable to plaintiff, it was clearly established at the time of the incident that an officer cannot "maliciously use[] force against an inmate who has been subdued." Dean, 984 F.3d at 310–11; see also Brooks, 924 F.3d at 114–17; Thompson v. Commonwealth of Va., 878 F.3d 89, 102–05 (4th Cir. 2017). In undertaking the clearly established analysis in this context, the court must assume defendant acted with malicious intent if plaintiff's evidence shows a genuine dispute on the issue. Dean, 984 F.3d at 310. As a result, defendant is not entitled to qualified immunity at this time.

2. Motion to Seal

Next the court considers defendant's unopposed motions to seal. The court has reviewed and considered the motion under the governing standard. Doe v. Pub. Citizen, 749 F.3d 246, 266–67, 272 (4th Cir. 2014). Plaintiff does not oppose sealing medical records filed by defendant in support of summary judgment. The public has received adequate notice of the motion to seal. Plaintiff's interest in the confidentiality of his medical records requires sealing in this case. Therefore, defendant's unopposed motion to seal (DE 33) is granted, and the clerk shall maintain docket entry 32 under seal.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 27) is DENIED. Defendant's unopposed motion to seal (DE 33) is GRANTED. The clerk is DIRECTED to maintain docket entry 32 under seal.

Before entering a trial scheduling order, the court requires that the parties participate in a court-hosted settlement conference. Accordingly, under Local Alternative Dispute Rule 101.1, EDNC, this case is REFERRED to United States Magistrate Judge Robert T. Numbers, II, for a court-hosted settlement conference, for the purpose of resolving all remaining issues in dispute. The magistrate judge will notify the parties how he wishes to proceed. Any decision regarding appointment of counsel for plaintiff for purposes of the settlement conference shall be within the magistrate judge's discretion. In the event the parties do not reach a resolution to this action, further order regarding trial planning and scheduling will follow.

SO ORDERED, this the 25th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge